### MORDHURST v. BOIES & BARRETT.

Principal and agent: POWER TO BORROW MONEY. An authority to an agent, from his principal, to draw checks on a bank in payment of property purchased by the agent, would not alone authorize the inference that he was authorized to borrow money on the responsibility of his principal.

*Appeal from Louisa District Court.*

WEDNESDAY, JANUARY 29.

PRINCIPAL AND AGENT: EXTENT OF AGENT'S AUTHORITY: POWER TO BORROW MONEY. — Action for money alleged to have been *loaned* by plaintiff to defendants. Answer — in denial.

The evidence showed that the plaintiff loaned $300 to Walker, who is claimed to be the agent of the defendants. The general nature of Walker's agency appears in the statement of the case of *Adams* v. *Boies & Barrett, ante.* He was defendants' agent to buy and ship cattle. The money sued for was borrowed by Walker, about the 1st of November, 1866.

Plaintiff testified as follows: "Walker came into my shop after banking hours and wanted $300, and another man from Illinois came in and prevented a check being given; I have not seen Walker since."

*Cross-examined:* "Walker had then two car loads of stock; don't know how many he shipped; don't know who the *two car loads were for;* did not say particularly who he wanted *the money for;* he offered me a check; he had not written it yet; said he would give me a check, but did not hand it to me; I was around with Walker the day before, buying hogs."

Defendant Barrett testified: "That Walker had no authority to borrow money for the defendants; but had previously been authorized to buy and ship cattle; that *October* 10*th to* 15*th*, 1866, they settled with Walker, and requested him to buy no more stock for them except to fill out a car load then on hand, which he did, and defendants arranged with the bank to pay for, and did pay for it."

It appeared that Walker ran away about the first day of November, 1866. There was some other evidence in the case tending to prove Walker's agency, but, as that was not disputed, it is not essential to refer to it more at length.

The court refused certain instructions prayed by plaintiff. It gave certain instructions of its own. Plaintiff complains of both. Defendants had a verdict. Plaintiff appeals.

*Henry O'Connor* for the plaintiff (appellant).

*J. Tracy* for the appellees.

DILLON, Ch. J. — On its own motion the court instructed the jury:

"1. An agent has no right to borrow money on the

Mordhurst v. Boies & Barrett.

responsibility of his principal, unless he is authorized by his principal to do so, or unless authority to do so can be justly inferred from the acts of the principal in connection with the business of the agency.

PRINCIPAL AND AGENT: power to borrow money.

" 2. If the agent, Walker, obtained the $300 of plaintiff for the expressed purpose of paying for hogs purchased by him for Boies & Barrett, and this fact was distinctly understood by plaintiff at the time he let the money go, and if the money was used by Walker in paying for hogs bought by him for defendants, they, defendants, would be liable for the amount.

" 3. If the money was obtained by Walker as an accommodation from plaintiff to him, and he did not tell the plaintiff he wanted it for Boies & Barret, or to pay for hogs purchased for them, and it was not used in payment of hogs bought for them, defendants would not be liable, and plaintiff cannot recover."

The court refused the following asked by the plaintiff:

" 2. If the defendants gave the agent authority to sign their name to checks, and ordered those checks paid, this is a circumstance for the jury to look at and say whether borrowing money on their credit for the particular business was within the scope of such business."

To these givings and refusals to give, the plaintiff excepted.

In argument, the plaintiff's counsel concedes the correctness of the first instruction given by the court.

But he complains of the second and third instructions of the court, or rather of the refusal to give in connection therewith his second instruction above copied.

We do not regard it as essential to examine these in detail. Under the evidence in the case the plaintiff ought not to have recovered; and the instructions were sufficiently favorable to him.

His own testimony shows the barrenness of his case.

He does not say that Walker borrowed the money on account of the defendants. Does not say that the money was borrowed to pay for stock purchased by Walker for defendants, or that Walker so used it or professed to borrow it for that purpose. He says Walker was to have given him a check on the bank, but did not. But he does not state that the check was to have been drawn on the defendants' account. The case would have been very different if the plaintiff had shown that Walker had bought stock for the defendants " of the man from Illinois who came in" or from others; that the vendor wanted his pay; that, owing to the bank being closed for the day, the agent could not get the money, and that the plaintiff advanced the amount to the agent to pay for the stock, and it was thus used.

Defendants gave Walker authority to sign checks on the bank for stock purchased.

This alone would not authorize the jury to say that the borrowing of money on credit by the agent was an act within the scope of his agency. The second instruction prayed by the plaintiff was properly refused.

Plaintiff gave no evidence that he was aware of Walker's habit of drawing checks on defendants' account; that defendants had no money in the bank; or that Walker had or kept no account of his own thereat.

Affirmed.