CASE 27—ACTION TO RECOVER POSSESSION OF A PIANO—DEC. 6.

# Baldwin, &c. v. Tucker.

### APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

PRINCIPAL AND AGENT—AUTHORITY OF SELLING AGENT TO ACCEPT NOTE TO HIMSELF FOR PRICE—NOTICE OF WANT OF AUTHORITY.

Held: As it is not customary for agents selling pianos to have authority to take notes payable to themselves for the price, the purchaser of a piano from such an agent was bound to know that the agent had no such authority, in the absence of anything to show that he did have such authority; and therefore the title to a piano, for the price of which a purchaser executed his negotiable note payable to the agent, did not pass from the principal to the purchaser, the agent having appropriated the proceeds of the note.

GAITHER & VANARSDALL AND SIMRALL & DOOLAN, ATTORNEYS FOR APPELLANTS.

This action was brought under sections 180 and 181 of the Civil Code, to recover the possession of a piano from appellee, which he purchased from one J. W. Sparks, a local agent of the appellants, with limited authority to sell pianos subject to the approval of the appellants. The agent's authority being prescribed in a written contract, to take orders for pianos under specific instructions embodied therein, subject to the approval of appellant. He was authorized to take orders for appellant in Harrodsburg, Ky., and to sell according to the terms named in a separate memorandum.

Baldwin, &c. v. Tucker.

## POINTS AND AUTHORITIES.

1. A person dealing with an agent of limited authority must, at his peril, take notice of such limitations, and he can not rely on mere assumption of authority by the agent. Mechem on Agency, secs. 289-290; Craycraft v. Selvage, 10 Bush, 709; Russell v. Cox, 18 Ky. Law Rep., 1087; Spalding v. Tucker, 21 Ky. Law Rep., 224; Chas. Brown Grocery Co. v. Becket, 22 Ky. Law Rep., 57 S. W. Rep., 458.

2. An agent has absolutely no authority to deal with the subject-matter of his agency for his own benefit, and, if he do so, it is a legal fraud on his principal which is shared in by the person dealing with him with knowledge of such legal fraud, and the principal is not bound by such "contract." Mechem on Agency, secs. 354-375; Benjamin on Sales (4th Am. Ed.), secs. 1095-1099, pp. 953-955; Tiffany on Sales, p. 203; Tiedeman on Sales, secs. 143 and 269; Ostrander on Insurance (2d Ed.), sec. 56; Chas. Brown Grocery Co. v. Becket, 22 Ky. Law Rep., 57 S. W. Rep., 458; Hoffman v. Mutual Life Ins. Co., 92 U. S., 161; Bertholf v. Quinlan, 68 Ill., 297-303; Holton v. Smith, 7 N. H., 451; Wheeler & Wilson Mfg. Co. v. Givan, 65 Mo., 89; McCormick v. Keith, 8 Neb., 143; Levi v. Booth, 58 Md., 305-319; McCulloch v. McKee, 16 Pa. St., 289; Trudo v. Anderson, 10 Mich., 357; Stewart v. Woodward, 50 Vt., 78; Aultman Co. v. Lee, 43 Iowa, 404; Greenhood v. Keator, 9 Bradwell, 183; McKindly v. Dunham, 55 Wis., 578; Godshaw v. Struck, 22 Ky. Law Rep., 820; Martin's Adm'r v. U. S., Monroe, vol. 2, p. 90; Vanadas Heirs v. Hopkins' Adm'r, 1 J. J. Marshall, 287; DeHart v. Wilson, 6 Monroe, p. 581; Am. & Eng. Ency. Law (2d Ed.), vol. 1, 987; Mechanics' Bank v. New York R. Co., 13 N. Y., 632; Tidrick v. Rice, 13 Iowa, 214; Snow v. Warner, 10 Met. Mass., 136; Resse v. Medlock, 27 Tex., 120; Dozier v. Freeman, 47 Miss., 660; Brown v. Johnson, 12 Smed. and M. Miss., 398; North River Bank v. Aymar, N. Y., 282; Am. & Eng. Ency. Law (2d Ed.), vol. 1, pp. 1012, 1027, 1028; McCormick v. Keith, 8 Neb., 142; Aultman v. Lee, 43 Iowa, 404; McCormick v. Walter A. Wood Mowing Machine Co., 72 Ind., 518.

3. Appellee's "contract" was not made with D. H. Baldwin & Company at all, but with "Baldwin Piano Company," a different concern.

BEN LEE HARDIN and W. C. BELL for appellee.

The testimony of A. A. Vanburen, one of the appellants, shows that J. W. Sparks, who sold the piano to appellee, had some sort of agency for more than a year, in territory embracing Harrodsburg, the home of appellee, to sell pianos for the firm

Baldwin, &c. v. Tucker.

of D. H. Baldwin & Co. This territory, easily canvassed for orders or sales, was impliedly occupied by Sparks, bringing to the knowledge of the citizens his agency; that this, with other pianos, was shipped by appellants to Sparks at Lawrenceburg, a part of his territory. The fact that Sparks had limited authority was not known to appellee, and he had the right to assume that Sparks had authority to make the sale.

Our conclusion is:

(1) A single act of an assumed agent and a single recognition of his authority by the principal is sufficient to prove the agency. Wilcox v. Chicago, &c., R. R. Co., 24 Minn., 269.

(2) Where facts exist sufficient to imply the relation of principal and agent, the parties are bound by them.

(3) An agent acting under a general authority binds his principal by any act done within the scope of his employment, even if done against instructions. Secret instructions can not affect third parties, dealing with the agent. 10 Bush, 632; 1 J. J. Mar., 285; 59 Ind., 93; 10 N. H., 538; 49 Iowa, 126; 24 Minn., 269.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

On October 7, 1898, D. H. Baldwin & Co., dealers in pianos and musical instruments, by a writing, authorized J. W. Sparks to take orders for their musical instruments in Harrodsburg, Ky., and such other territory as might be agreed upon. The instruments and proceeds of sale were to be the property of appellants. The orders taken and sales made by him were not to be binding on appellants until approved by them. Blank notes were furnished to him, payable to appellants' order, and they were to be subject to appellants' approval when executed. On November 22, 1898, appellants shipped to J. W. Sparks, Lawrenceburg, Ky., four pianos, for the purpose of taking orders therefor, according to the terms of the contract of agency. One of the four pianos shipped to him was sold to Charles Sparks, and one of them is the one in contest. On December 22, 1898, he sold the appellee, Tucker, a piano for $120, for which he took a note payable to himself individually,

twelve months after date, at the First National Bank, Harrodsburg. Upon receipt of the note and delivery of the piano, he discounted the note at the bank, and never accounted to appellants for any part of the proceeds. Four or five days after this transaction, appellee wrote to appellants, at Louisville, Ky., that he had bought the piano, Sparks not having made any report of sale to them. The company at once declined to ratify the sale, and claimed the piano. The appellee refused to give it up, and this action was instituted to recover the possession of it, upon the claim that it belonged to them, as they had never parted with title thereto. The appellee resisted recovery, upon the idea that Sparks was acting for appellants, and that they were bound by his acts. Upon the proof as to the contract of agency and the value of the piano, etc., the court, at the conclusion of appellants' testimony, instructed the jury to find for appellee.

It is a difficult question sometimes to determine whether an agency is general or special. It is sometimes held that where an agency is special as between principal and agent it is general between the principal and third persons. Where the agency is created by writing, it seems to be proper for the court to determine whether it is general or special. If it be by parol it is for the jury to determine its character and extent. Mr. Mechem, in his work on Agency, section 6, says: "A universal agent is one authorized to transact all of the business of his principal of every kind. A general agent is an agent who is empowered to transact all of the business of his principal of a particular kind or in a particular place. A special agent is one authorized to act only in a specific transaction. A principal can have but one universal agent. He may have a general agent in each line of his business, and in each of

several places.  He may employ as many special agents as
occasion may require.  A universal agency is of very rare
occurrence, the great majority of the cases being those
which involve some form of general or special agency."
Sparks seems to have been made the agent, with limited
powers, to transact all the business in the matter of sell-
ing musical instruments in the city of Harrodsburg and
such other territory as might be agreed upon between the
parties.  Without deciding, we will assume, that he was a
general agent for appellants to sell pianos in Harrodsburg.
According to the terms of the contract, he had no authority
except to solicit orders for pianos.  Where an agent is in-
trusted with goods to sell for his principal, he has no
right to sell or deliver them in payment of his own debt.
The creditor who receives goods under such an arrange-
ment, notwithstanding he may be acting in good faith and
in ignorance that the goods did not belong to the agent, ac-
quires no title thereto against the principal.  Where the
principal authorizes the agent to collect a demand, or re-
ceive payment of one, he can not be bound by the action of
the agent except he actually collect the money.  The agent
is not authorized to take the note of the debtor, payable to
himself or to his principal.  Mechem, Ag., sec. 354, says:
"An agent intrusted with goods to sell for his principal
has no right to sell or deliver them in payment of his own
debt, or to pledge them as security for his own debt, and
persons dealing with such an agent are bound to take no-
tice of this limitation of his authority.  A creditor there-
fore, who receives the goods under such an agreement, as
well as his vendee, though acting in good faith, and in ig-
norance that the goods did not belong to the agent, ac-
quires no title thereto, as against the principal."  The same
author, in section 375, says:  "An agent authorized merely

Baldwin, &c. v. Tucker.

to collect a demand, or to receive payment of a debt, can not bind his principal by any arrangement short of an actual collection and' receipt of the money. He can not, therefore, take in payment the note of the debtor, payable either to himself or to his principal; or the note or bond of himself, or of a third person; or a draft or order on a stranger, or horses, wheat, merchandise, or other property of any kind; nor can he set off a claim due from himself; or take property for his own use in payment." In Grocery Co. v. Becket (22 R., 393), (57 S. W., 458), the court said: "The general rule is that the acts of an agent bind his principal within the scope of his apparent authority, but that the principal is never bound where the person dealing with the agent knows, or has reason to know, that the agent is exceeding his authority, or is perpetrating a fraud on his principal." In Hoffman v. Insurance Co., 92 U. S., 161, 23 L. Ed., 539, it appeared that an agent of the company agreed to take in payment for the premium a horse for himself and a note to himself. The insurance company refused to recognize the transaction, and in passing upon the question the court said: "The exercise of such a power by the agent was liable to two objections,—it was *ultra vires*, and it was a fraud as respects the company. Hoffman must have known that neither Goodwin nor Thayer had any authority to enter into such an arrangement, and he was a party to the fraud. No valid contract as to the company could arise from such a transaction." In Bertholf v. Quinlan, 68 Ill., 297, an agent had in his possession whisky for sale. He traded it for a piano. The court held that he had no authority to make such a contract, and that the principal was not bound thereby, and was entitled to recover possession of the whisky, or its value. In Holton v. Smith, 7 N. H., 451, an agent, with general authority

to sell his principal's goods did so, and received in pay-
ment a debt due from himself to the purchaser. The court
held that the principal was entitled to recover the goods.
It said: "Miller had an undoubted authority to sell the
goods; but it was to sell them, not as his own, but as the
goods of the plaintiff; and, acting as agent of the plain-
tiff, he had no right to exchange them for other goods, or
for his own note. By the disposition he made of them he
treated them as his own, and this disposition was not prop-
erly a sale, within the meaning of his authority to sell,
but a delivery over, at a certain price, in payment of a de-
mand against himself. Although in the nature of a sale,
it is, in fact, a payment of his debt with goods instead of
money. If it might also be considered as a purchase by
himself at the same time, that will not avail, as an agent
has no right to purchase of himself what he is intrusted
to sell. Had Miller sold, and received the money, he might,
to be secure, have squandered it, but that can make no dif-
ference. . . . If a principal may be subjected to loss in
such modes, it is because he has thus far trusted to the
fidelity of the agent, and this furnishes no reason why the
law should permit the agent to defraud him in the other
cases." In Manufacturing Co. v. Givan, 65 Mo., 89, a sew-
ing machine agent had authority somewhat similar to the
powers of Sparks in this case. He sold a machine under
a contract that he would take part pay for it in board for
himself. The court held that the contract was not binding
on the company, saying: "He has no right to charge the
security of his principal for his debt, or to make himself
the debtor to the principal for the like amount in lieu of
the person who owes the debt, without the consent of the
principal to that effect. If an agent has authority to re-
ceive for his principal a debt due from a third party to him,

and the agent owes a like amount, or a greater, he has no right to substitute himself as the debtor of the principal, giving him credit for the amount, or to set off the debt due by him to such third person." In Culloch v. McKee, 16 Pa., 289, an agent was authorized to collect a debt. He took a note from the debtor payable to himself in settlement. The court held that it could not be done. In Trudo v. Anderson, 10 Mich., 357, 81 Am. Dec., 795, an agent was authorized to sell a horse, but he exchanged it for another. The court held that he had no power to do so. In Stewart v. Woodward, 50 Vt., 78, 28 Am. Rep., 488, a general agent for a merchant tailor agreed with a doctor to sell the principal's goods in payment of a medical bill which the agent owed him. The agent's authority was general. The court held that he could not be presumed to have the power to make such a contract for his own benefit at the expense of his principal. In Aultman v. Lee, 43 Iowa, 404, an agent for the sale of threshing machines agreed with the purchaser that he would take wheat from him in part payment of the notes given for the machine. The court held that he could not bind the principal by such contract. When the principal places goods in the hands of his agent to sell, the parties dealing with him are bound to take notice that there is a limitation upon his authority which prevents him from taking property in exchange for that which he has to sell, or from receiving in payment thereof the purchaser's note payable to the agent. If an agent has a debt to collect for his principal the debtor must take notice that there is a limitation upon the authority of the agent to receive anything in payment of it except money. If the agent can not take a note payable to himself for a debt which he has in his hands to collect, or can not take

the note of another in payment of the demand, upon what
principle can he sell the property which may be intrusted
to him for that purpose and take a note payable to himself
for the purchase money? In this case the appellee knew
the piano belonged to appellants. He assumed that Sparks
was acting as their agent in the sale of the piano. He was
bound to know that there was such a limitation upon the
power of the agent that he could not take the purchaser's
note payable to himself for the purchase money of the
piano. In Hoffman v. Insurance Co., 92 U. S., 161, 23 L.
Ed., 539, the supreme court expressly held that the agent
had no right to take a note payable to himself for the
premium due his principal. Any man with ordinary un-
derstanding ought to know that a firm handling a vast
number of pianos, like appellants, would not send its agents
over the country to sell pianos and take notes payable to
themselves for the purchase money. It is not a question,
however, of what he ought to know, but in a transaction
like the one under consideration the purchaser is bound to
know that there was a limitation upon the agent's au-
thority which would prevent him from taking a note pay-
able to himself for the purchase money. The proof shows
that the selling price of the piano was $300, and yet Sparks
sold it to the appellee for $120, besides taking the note
payable to himself. The court erred in giving a peremp-
tory instruction to the jury. On the facts shown in this
record it should have told the jury, in the absence of any
evidence to show that Sparks was authorized to sell the
piano and take the note payable to himself for the purchase
price, to find for appellants. There was nothing in this
case to show that, in the business of selling pianos by
agents, it was usual for them to take notes payable to
themselves for the purchase money. Had such been shown,

then it would appear to be an act within the scope of the agent's apparent authority. It is said in Hoffman v. Insurance Co., 92 U. S., 164, 23 L. Ed., 539: "Within the sphere of the authority conferred, the act of the agent is as binding upon the principal as if it were done by the principal himself. But it is an elementary principle, applicable alike to all kinds of agencies, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this affect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner, as well as the limit, of its exercise."

The judgment is reversed for proceedings consistent with this opinion.

Judge Hobson, (dissenting). It has often been held by this court that the acts of an agent within the apparent scope of his authority bind his principal; and that, where there is any evidence of fact, it must be left to the jury, and is not to be determined by the court, as a matter of law, on a motion for nonsuit. Appellants sent out their agent to sell pianos for them; they gave him possession of their instruments, assigned him certain territory in which he was to represent them, and authorized him to sell on credit. As to the public he was their representative in that territory. The selling of a piano was within the apparent scope of his authority, and they are bound by his sale, unless the circumstances were such as to apprise the purchaser that the agent was exceeding his authority or such as to put a reasonable man on inquiry. It is said that the purchaser was put on inquiry by the fact that the

piano was sold at $120, and a note taken payable to the agent. No weight is given in the opinion to the amount of the price. Pianos vary much in value, and there is not enough in this case to show that the purchaser was put on notice, by the amount asked for the piano, that something was wrong. At least, what weight should be attached to this circumstance is clearly a question for the jury. As to the taking of the note to himself, the agent having the power to sell on credit and take a note for the price, it was within the apparent scope of this authority to determine the form of the note. The purchaser had a right to assume that the agent took the note according to the course of business between him and his principal. A large part of the business of the country in the selling of sewing machines, pianos, and the like is done by agents who go from house to house and sell their wares on credit. It is not uncommon for the principal to require them to take the notes in their own names and then indorse them, so as to make them personally responsible for the notes. No authority can be found for the proposition, so far as I am aware, that the taking of a note by an agent in his own name, is, as a matter of law, conclusive to the purchaser that the agent is exceeding his authority. None of the authorities cited by the court sustain this conclusion, and it is, at least, remarkable that, if such is the law, no case so holding can be found, when such a large part of the business of the country has for years been done in this way. As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority, and thus enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority, and there

is nothing in the transaction to put the purchaser on notice that he is exceeding his authority. Where authority is conferred by parol the rule is that the apparent scope of it is a question for the jury. It seems to me the same rule should be applied where the agent is sent to take charge of his principal's interest in a territory distant from his principal, and the secret arrangements between the principal and the agent are unknown to the public dealing with him.

I am therefore of opinion that the case should be left to the jury, under proper instructions, and that a peremptory instruction should not be given, and in this dissent Judges Burnam and Guffy concur