OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY TERM, A. D. 1905.

AND IN THE FIFTY-NINTH YEAR OF THE STATE.

---

WYCOFF, SEAMAN & BENEDICT, Appellant, v. HERMAN DAVIS, Appellee, and PETER RUSH, Defendant.

**Principal and agent:** WRONGFUL PLEDGE OF PRINCIPAL'S PROPERTY: RE-COVERY: RATIFICATION. Where an agent, having authority simply to sell typewriters for his principal and collect the price, borrowed money on his own account and turned over machines belonging to his employer as security therefor, stating to the lender that the machines were his property and that he had a right to sell them, his principal could maintain an action to recover the same without repaying the loan; and the acceptance by the principal of money so obtained in ignorance of the transaction and by it applied on the agent's account, was not a ratification of the agent's act in pledging the machines.

*Appeal from Wapello District Court.*— HON. F. W. EICHEL-
BERGER, Judge.

TUESDAY, MAY 2, 1905.

ACTION of replevin to recover the possession of two type-
writers. Defendant Davis claimed 'to hold the same 'in
pledge to secure a loan of money. The case was tried to the
court, a jury being waived, resulting in a judgment for the
defendant, fixing the value of his interest in the property
at $134.23, being the amount of the alleged loan with interest.
Plaintiff appeals.— *Reversed.*

*McNett & Tisdale,* for appellant.

*Jaques & Jaques,* for appellee.

DEEMER, J.— One Dahlberg was plaintiff's agent at the
city of Ottumwa for the sale of Remington typewriters. De-
fendants Davis and Rush were running a gambling house
in Ottumwa, and Dahlberg was a frequenter of their estab-
lishment. In this gambling den he, Dahlberg, lost several
hundred dollars of his employers' money. Dahlberg had
authority to sell and deliver typewriters in his particular
locality, which included the city of Ottumwa, and to collect
the purchase price therefor, and also to collect plaintiff's
accounts in general within the territory alloted to him. In
September of the year 1902, Dahlberg was short in his ac-
counts with his employers to the extent of nearly $800.
During this month he sent two checks to his principal pur-
porting to represent some collections made by him. These
checks were drawn on an Ottumwa bank, and, when returned,
were dishonored by that bank. Plaintiff, through its other
agents, was demanding a settlement by Dahlberg, and he,
Dahlberg, went to defendant Davis for help. Davis finally
loaned him $125, but insisted upon the delivery of the

machines in question as security for the loan.    To this Dahl-
berg yielded, and pursuant thereto delivered the machines
to Davis, and at the same time, at Davis' request, he, Dahl-
berg, issued a receipt to Davis, in the name of the plaintiff
company, showing payment of the sum of $205 in full for
the two machines.    Dahlberg did not receive more than $125,
and he did not sell the machines to Davis.    Davis says in a
half-hearted way that he purchased the machines from Dahl-
berg, but his own testimony shows that the transaction was
a pledge rather than a sale.    With the money so received
Dahlberg took up the two protested checks; but plaintiff
had no knowledge as to where the money came from until
after it had actually been received and credited.    Thereupon
one of plaintiff's agents went to Ottumwa to settle its affairs
with Dahlberg, and then learned of the pledge of the ma-
chines.    This action of replevin was then instituted, result-
ing in the judgment heretofore stated.

While many questions are argued, there is but a single
proposition involved in the case, and that is, may plaintiff
recover the machines from Davis without returning the $125
loaned by him to Dahlberg?    Much is said about the rules
applicable to gambling transactions, which has nothing to
do with this case. . Davis did not return, nor did Dahlberg
receive, the $125 because of any change of heart on the
part of Davis.    No one pretends that this $125 was any
part of the money won from Dahlberg.    It is practically
conceded that it was a loan from Davis to Dahlberg, induced
to some extent, perhaps, by the thought that, as Dahlberg
had lost his money in defendant's establishment, he, Davis,
would be more likely than any one else to make the loan;
but at the same time Davis was not conscience-smitten, for
he demanded and received what was thought to be adequate·
security for the loan.    But this loan was not made to plaintiff
company, or to Dahlberg as agent of the company, but to
Dahlberg individually, to enable him to meet a shortage
due his principal.    He had the right as an individual to

borrow money of whom he would, but he had no authority to pledge the property of his employer as security for his individual debts. No agent has any such implied authority, and it is not claimed that any express authority was given. Dahlberg told Davis that he was short in his accounts, and that he wanted the money to send to his employer. This being true, it is clear that the loan was not made either in fact or form to the company. Dahlberg did represent that the machines belonged to him individually, and that he had a perfect right to sell them; but he did not represent to Davis that he had authority to pledge them for a loan either to himself or to his principal. Divested of all extraneous matter, the case is this. Dahlberg had possession of the machines as agent for the plaintiff, with authority to sell the same and to collect the purchase price. He was short in his accounts with his principal, and applied to Davis for a loan to make up this shortage, stating the facts to him, Davis. He represented to Davis that the machines were his, and that he had authority to sell them. Davis loaned $125 to Dahlberg individually, and took the machines as security for the loan, but, in order to make the transaction appear as a sale, insisted upon a receipt showing a sale rather than a pledge. Dahlberg did not, of course, own the machines, and he could not pledge them as security for his individual indebtedness. These being the facts, the ultimate conclusion is clear. Dahlberg having no express or implied authority to pledge the machines as security for his own debt, the transaction was not binding upon the plaintiff, and it may recover its property, unless it be that, by receiving the money as a result of the transaction, it ratified the same and is estopped from asserting its title. Of course, if Dahlberg had assumed to act as an agent for his company in securing the loan and pledging the machines, and plaintiff had received the money so obtained, it could not repudiate the transaction without returning the money. But that is not this case. Here the loan was not

made to the plaintiff either actually or ostensibly, but to Dahlberg in his individual capacity to enable him to meet a shortage to his company. The property was not pledged as the property of the company, but as Dahlberg's. Dahlberg was indebted to his company on other accounts, and the loan was to enable him to make up his shortage to his principal. The company had the right to receive its money from its agent to apply on this shortage, no matter what its source, so long as the agent had not undertaken to act in his capacity as agent in obtaining the money. It was not bound to return the money, because its agent borrowed the same in his individual capacity and pledged his principal's property as security therefor, not as agent, but representing himself to be the owner thereof, with authority, in virtue of such ownership, to sell. The doctrine of ratification has no application to such a state of facts, for there is nothing to ratify; nothing was done on the company's behalf or in its name; the transaction was in the name of Dahlberg and for his individual benefit. In such cases the rules relating to ratification manifestly do not apply. *Thacher v. Pray,* 113 Mass. 291 (18 Am. Rep. 480); Mecham on Agency, section 127; *Hamlin v. Sears,* 82 N. Y. 327; *White v. Sanders,* 32 Me. 188.

We are then brought down to the simple question as to which of the parties to this litigation has the better title or right to the possession of the property. Plaintiff is conceded to have been the owner. If it has lost its title, it was through the act of Dahlberg, its agent. Dahlberg had no authority, either express or implied, to mortgage or pledge the property for a debt of his own. *Bray v. Flickinger,* 69 Iowa, 167, 79 Iowa, 313. Even if Dahlberg had assumed to mortgage the property as the property of his principal, he would not have had authority to do so under power to sell and collect the purchase price, although here the question of estoppel by ratification might perhaps arise. See, as supporting these conclusions: *Mordhurst v. Boies,* 24 Iowa,

99; *Gilbert v. Baxter,* 71 Iowa, 327; *Van Vechten v. Jones,* 104 Iowa, 436; *Edgerly v. Cover,* 106 Iowa, 670. None of the cases cited and relied upon by appellee are in point, for in each there was some act done by the agent in the name of or on behalf of his principal which was the subject of ratification. This is not true in the case at bar, and plaintiff was not obliged to see if there was any " taint on the money " which was paid by its agent, Dahlberg, in satisfaction or part satisfaction of his account with it. Even if the money were tainted, there is no principle of either law or morals which would prevent the plaintiff from receiving it.

The judgment of the district court, which was evidently based upon the theory of ratification, is wrong, and it is therefore *reversed.*