## Pemberton v. Price & Teeple Piano Co.

(Decided September 22, 1911.)

### Appeal from Hopkins Circuit Court.

1. Agency—Right of Agent to Sell Principal's Goods for His Own Debt.—Where the agent is intrusted with goods to sell for his

principal, he has no right to sell or deliver them in payment of his own debt.

2.  Principal and Agent—Ratification of Unauthorized Act.—One of the essential elements for the basis of a ratification of an unauthorized act by an agent is, that the contract must have been made in the name of and in behalf of the principal.

3.  Agency—Estoppel.—Where the principal first brought suit against his agent for the price of the goods, and subsequently brought another suit against the agent's vendee for the possession of the property, the principal is not estopped to prosecute the suit against the agent's vendee by having theretofore brought his suit against the agent for the value of the property, since the vendee of the agent has in no wise been misled by any act of the principal.

4.  Estoppel—Pleading of.—Estoppel is not a favorite doctrine and cannot be proved under a general denial. To become available as a defense it should be pleaded.

C. J. WADDILL for appellant.

GORDON & HOPEWELL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming:

Appellee, Price & Teeple Piano Co., of Chicago, instituted this claim and delivery suit against Kate Pemberton on January 26th, 1910, for the recovery of a piano valued at $250.00. It succeeded, and from a judgment awarding it possession of the piano, the defendant prosecutes this appeal.

W. F. Hopkins and W. E. Lafoon, doing business as partners under the name of the "Madisonville Music Company" (hereinafter called the Music Company for brevity) had been, for several years before the filing of the petition, in the business of selling pianos and musical instruments of the Price & Teeple Piano Co., under a written contract which retained the ownership of the goods in the Piano Company, and gave the Music Company a selling agent's commission only. All pianos, organs and other property furnished to the Music Company were held on consignment until sold and such sale was approved and accepted by the Piano Company. All notes, contracts and leases taken in the sale of goods, were to be a lien upon the instruments sold, and made payable to the Piano Company, and subject to its approval and acceptance. The Music Company handled

and sold other pianos and musical instruments, and had similar contracts with other piano companies. It became the tenant of appellant, Kate Pemberton, and as such tenant took possession of and moved the piano which is the subject of this action, into her store-house. It became indebted to her in the sum of $160.00 for the rent of said store-house, which was evidenced by the Music Company's note, wherein a lien was retained on said piano to secure the payment of the note. The Music Company turned over said piano to the appellant in satisfaction of said rent note within three months after said rent had become due. The Piano Company did not expressly know of or consent to the delivery of the piano to the defendant, except in so far as the Music Company had the right to act for it under the written contract. The Music Company, for months prior to the time it became the tenant of appellant, had been selling pianos and instruments of the Piano Company; and said Piano Company had no other agent in Madisonville, if, indeed, the Music Company is to be considered the agent of the Piano Company. The appellant did not know of the written contract between the Piano Company and the Music Company, and took the piano in good faith.

The case having been tried by the judge without the intervention of a jury, a judgment was entered granting the Piano Company the possession of the piano upon the ground that the Music Company could not use its principal's property to pay its own debt and that the appellant in accepting the property in payment of such debt, acquired no title thereto.

The circuit judge rested his decision upon the authority of Baldwin v. Tucker, 112 Ky., 282, and in doing so we think he ruled correctly. In that case this court enforced a contract substantially like the one at bar, after a full consideration of the questions involved. The opinion thoroughly discusses the question, and it is not necessary to repeat the discussion here. The gist of it is contained in the following language, found on page 286.

"Sparks seems to have been made the agent, with limited powers to transact all the business in the matter of selling musical instruments in the city of Harrodsburg and such other territory as might be agreed upon between the parties. Without deciding, we will as-

sume, that he was the general agent for appellants to sell pianos in Harrodsburg. According to the terms of the contract, he had no authority except to solicit orders for pianos. Where an agent is intrusted with goods to sell for his principal, he has no right to sell or deliver them in payment of his own debt. The creditor who receives goods under such an arrangement, notwithstanding he may be acting in good faith and in ignorance that the goods did not belong to the agent, acquires no title thereto against the principal."

And on the same page the opinion quotes the following from section 354 of Machem on Agency in support of its conclusion:

"An agent intrusted with goods to sell for his principal has no right to sell or deliver them in payment of his own debt, or to pledge them as security for his own debt, and persons dealing with such an agent are bound to take notice of this limitation of his authority. A creditor therefore, who receives the goods under such an agreement, as well as his vendee, though acting in good faith, and in ignorance that the goods did not belong to the agent, acquires no title thereto against the principal."

In the case at bar the agent, the Madisonville Music Company, undertook to pay its own debt of $160.00 by delivering to appellant a piano belonging to the appellee, the list or wholesale price of which was $250.00. Appellant stoutly contends that because this rental was owing by the agent for a house in which the pianos of appellee were stored, that the debt became the debt of the principal as one necessarily incurred in order to carry out the agency. This is the familiar contention usually made in all cases of this character; and not only substantially assumes the question in issue, but was disposed of adversely to appellant's contention in Baldwin v. Tucker, supra.

2. It is insisted, however, that appellee ratified the transaction between the Music Company and the appellant. The facts of ratification relied upon appear in the evidence only, and are as follows: Appellee resided in Chicago; and prior to September 10th, 1909, its attorneys had prepared a suit against the Music Company and its sureties upon a balance owing by it, which included the price of the piano recovered in this case. Ap-

pellee did not know, at that time, what had become of
this particular piano. On September 10th its attorneys
learned that this piano was in the possession of appel-
lant, but they did not know the character of appellant's
possession; and on that date they wrote appellee inquir-
ing as to the facts of the transaction. Appellee knew,
nothing of the facts or character of appellant's posses-
sion of the piano. Appellee's attorneys did not learn
until September 24th the true state of facts as to appel-
lant's possession of the piano, and on that date they
notified appellant that appellee claimed the piano as its
property, and would sue for it unless possession was
surrendered immediately. In the meantime the suit
to recover the balance due had been held up for several
days, pending a proposed settlement by the sureties,
but was finally filed on September 15th, 1909. Subse-
quently, this action for the possession of the piano was
instituted against the appellant on January 26th, 1910.
The first suit against the Music Company and its sure-
ties was prosecuted to judgment on February 7th, 1910,
while this suit against the appellant for the possession
of the piano was prosecuted to judgment on October
18th, 1910. Although appellee's attorneys did not know
all tho facts connected with appellant's possession
of the piano at the time they filed the suit against the
Music Company and its sureties on September 15th,
for the purchase price of piano, appellant insists that
appellee's attorneys did know of the contract of agency,
and that appellant had possession of the piano; and that
these facts are the only material facts bearing on the
question whether the principal should elect to look to
the agent for its purchase price, or disaffirm the act
of the agent and recover the piano. Appellee did elect
to look to the piano immediately upon getting the infor-
mation that appellant had the piano; and appellee's
attorney so notified appellant immediately thereafter.
Appellee's attorneys did not know until September 24th
that the Music Company had not sold the piano to the
either kept the cash or turned it in to appellee. Fur-
appellant for cash. It might have done so and have
thermore, it was possible that the Music Company had
sold the piano to the appellant and taken her note there-
for, and either held or had turned the note in to appel-
lee according to the contract.

It is admitted that upon learning that appellant had

the piano, the appellee immediately directed its attorneys to claim it, and they did so claim it. It is true that appellee took judgment against the sureties of the agent for the amount sued for, which embraced the price of the piano; but we do not see how that fact can constitute any defense to the appellant, by way of ratification or otherwise.

Huffcut on Agency (2nd Ed.) section 32, says:

"Two elements must concur before the basis for ratification can be said to be laid: (1) The principal must be an existing person capable of being ascertained, and (2) The contract must have been made in the name of and in behalf of such existing and ascertainable person."

And in amplifying the second point, Huffcut says:

"The contract must be professedly made in behalf of such existing principal. It seems to be the prevailing American rule that in order that a person may ratify an act of another, the act must have been done professedly in the name of and on behalf of, the one so ratifying; in other words, that where the act is done in the name of the actor, without naming or disclosing any other person, there can be no ratification, even though the actor was in fact acting in behalf of an undisclosed principal." As was well said by Lord Robertson in Keighly v. Durant, 1901, A. C. 259, "the whole hypothesis of ratification is, that the ultimate ratifier is already in appearance the contractor, and that by ratifying he holds as done for him what already bore, purported or professed to be done for him. But there is no room for ratification (unless the whole world may ratify it) until the credit of another than the agent has been pledged to the third party."

The doctrine is well stated in Western Publishing House v. Rock, 84 Iowa, 101, as follows:

"The plaintiff, while inferentially conceding that the contract was made without authority, insists that it was afterwards ratified. But as the contract did not purport to bind the defendant, it could not ratify it. There is no such thing as the ratification of a contract by an obligor made by another, when it does not purport to bind him, but binds the other. In such a case the obligor cannot become bound by a ratification. He can

only become bound by a new contract assuming or adopting the obligation of the prior one."

The general doctrine is perhaps nowhere better stated than in the following language of Earl, J., in Hamlin v. Sears, 82 N. Y., 327:

"The general doctrine that one may, by affirmative acts, and even by silence, ratify the acts of another who has assumed to act as his agent is not disputed. It is illustrated by many cases to be found in the books, and set forth by all the text writers upon the law of agency. (Story on Agency, section 251a; Greenl. on Ev., secs. 66, 67; 2 Kent's Com., 616; Thompson v. Craig, 16 Abb. (N. S.) 29; Wilson v. Tumman, 6 Mann, & Gr., 236; Watson v. Swan, 11 C. B. (N. S.), 756. But the doctrine properly applies only to cases where one has assumed to act as agent for another, and then a subsequent ratification is equivalent to an original authority. One may wrongfully take the property of another not assuming to act as agent, and sell it in his own name and on his own account, and in such case there is no question of agency, and there is nothing to ratify. The owner may subsequently confirm the sale, but this he cannot do by a simple ratification. His confirmation must rest upon some consideration upholding the confirmation, or upon an estoppel. (Workman v. Wright, 36 Ohio St., 405)." See also Grund v. VanVleek, 69 Ill., 487; Herd v. Bank of Buffalo, 66 Mo. App., 643; Pittsburg R. R. Co. v. Gazzam, 32 Pa. St., 340; Wycoff v. Davis, 127 Iowa, 399; Garvey v. Jarvis, 46 N. Y., 310.

In delivering the piano to appellant the Music Company did not pretend to be acting for the appellee; on the contrary, it acted solely for itself. There having been no attempt on the part of the Music Company to execute an agency, there was nothing to ratify.

3. Neither is there any effective estoppel against the appellee by reason of its having prosecuted the action against the Music Company and its sureties for the purchase price of the piano. That action, and its result, in no way prejudiced the rights of the appellant. The substance of estoppel is the inducement to another to act to his prejudice. The act of estoppel must necessarily occur first in the point of time, and not after the alleged injury has been suffered, as in this case.

In Huffcut on Agency, sec. 51, it is said:

"Estoppels may arise (1) from a record, (2) from a deed, (3) from a contract, or (4) from a misrepresentation, which misrepresentation may be either by words or by conduct. Estoppels arising from contract or from misrepresentation are usually termed estoppels in pais, a phrase frequently used but conveying in itself no very definite notion. In the law of agency we are mainly concerned with estoppels arising from misrepresentations."

No misrepresentation is claimed; on the contrary, appellee has merely prosecuted what it deemed to be its rights under the law and the facts. Appellant took no step upon either a representation or a misrepresentation made by the appellee, and has not been prejudiced by any act of appellee.

4. Furthermore, the defense of estoppel has not been relied upon in the answer. Estoppel is not a favored doctrine and can not be proved under a general denial, which is the only defense set up in this case. It is new matter, and should be set forth by answer to become available as a defense.

Excelsior Coal Mining Company v. Virginia I. & C. Co., 23 Ky. L. R., 1834; Hilton v. Colvin, 25 Ky. L. R., 1808; Peyton v. Woolen Mills Co., 28 Ky. L. R. 1303.

We are of the opinion that the judgment of the circuit court was right, and it is affirmed.