CARRIE FITCH, now CARRIE QUIGLEY, Appellee, v. A. R. STEPHEN-
SON, Appellant.

No. 42092.

JANUARY 9, 1934.

John D. Randall, for appellant.

J. C. France, for appellee.

CLAUSSEN, C. J.—Carrie Fitch by marriage became Carrie Quig-
ley. She is the mother of Wilmer H. Fitch, who will be referred
to hereinafter as Fitch. In 1926, Fitch was the owner of lots 7 and
8, block 3, original town of Bennett, Cedar county, Iowa. At that
time he was indebted to his mother for sums of money advanced to
him at various times. These sums were all figured up by Mrs.

Quigley's attorney on May 6, 1926, and a deed was prepared by which Fitch conveyed the property to his mother for the recited consideration of $4,500, that being the amount of the advances made to him. This deed was filed for record in the county recorder's office on May 7, 1926. Fitch is a veterinarian. He occupied a part of the premises above referred to as an office. Appellant Stephenson is also a veterinarian. On the 15th day of January, 1929, he entered into a contract with Fitch by which Fitch agreed to sell, and Stephenson agreed to buy, the above-described real property, Fitch's veterinarian business and stock of drugs, and Fitch agreed to refrain from the practice of his profession in Bennett and within a radius of twenty miles of Bennett for a period of fifteen years. The consideration of the contract was $5,000. $1,500 was paid at the time the contract was made. The balance was payable in $500 payments to be made on August 1, 1929, January 1, 1930, and on the 1st day of July and January thereafter until the total amount had been paid. As before noted, $1,500 was paid at the time the contract was made. Thereafter the following payments were made: August 20, 1929, $150; September 7, 1929, $100; September 18, 1929, $150; February 1, 1930, $100. All of such payments were made to Fitch.

Fitch did not live up to his agreement to refrain from the practice of his profession within the radius of 20 miles of Bennett, but opened up an office at Walcott, which was within the prohibited territory. Stephenson brought an action to restrain Fitch from violating the contract. The time when this action was commenced is not disclosed by the record, but the matter came on for trial, and decree was entered in it on May 29, 1931, restraining Fitch from practicing his profession within the proscribed territory. At the time the injunction suit was tried, Stephenson was in default in his payments on the contract. Fitch pleaded the facts in this respect as a defense in the injunction suit but, as before noted, Stephenson was granted injunctive relief.

While the injunction suit was pending the present action was commenced at law by Mrs. Quigley to recover possession of the real property, upon the theory that she was its owner and consequently entitled to its possession. Stephenson filed an answer and cross-petition alleging that he was the owner and entitled to the possession of the real property. In the cross-petition he alleged that plaintiff was only the owner of the naked legal title to the prop-

erty; that said property in truth belonged to Fitch; that he (Stephenson) had entered into a contract with Fitch for the purchase of the real property at the agreed price of $1,500, and a stock of drugs owned by Fitch for $300 and the good will of Fitch's veterinary practice for the remainder of the contract price, which by process of calculation would be $3,200. Stephenson alleged that he had paid $2,000 on the contract, which was payment in full for the buildings and drugs; that Fitch had breached his contract and thereby forfeited the sum which was to be paid to him for the good will of the practice. He asked that title be quieted in him and that plaintiff be required to convey the real property to him. During, or at the close of, the trial the defendant amended his answer, to conform the pleadings to the proofs, by alleging that in the execution of the contract Fitch acted as the agent of plaintiff; that under the contract Stephenson acquired an equitable interest in the property and the right to its possession; that plaintiff with full knowledge of the contract, ratified the same by accepting from Fitch $2,000, paid by Stephenson to Fitch on the contract, and is estopped to deny the right of Stephenson to the possession of the property under the terms of the contract.

It was also alleged by the defendant that he had been garnisheed by a judgment creditor of Fitch and that if any money were due Fitch it could not be paid on account of such garnishment.

The allegation that the contract entered into was for the purchase of the building at $1,500, the drugs at $300, and the good will of the business at $3,200, is totally unsupported by evidence. The written contract reads:

"(2). In consideration of the sale and agreement to convey the real estate hereinbefore referred to and the said furniture, fixtures, stock, good will, etc., the party of the second part hereby agrees to pay to the party of the first part or his heirs, or assigns, the sum of five thousand ($5000.00) dollars."

The testimony of the witnesses in relation to the negotiations preceding the execution of the written contract does not establish that any of the items covered by the contract were included in the contract at a definite figure.

Upon the basis that the building, the stock of drugs, and the good will of the business were sold at separate figures, the defendant constructs an ingenious theory under which no further obliga-

tions rest upon him under the contract notwithstanding the fact that $3,000 of the $5,000 has not been paid. He contends that the building was sold for $1,500 and the stock of drugs for $300, or a total of $1,800. He argues that because he has paid $2,000, these items have been fully paid. He says that in the injunction suit Fitch pleaded the default in making the $500 payments when they became due as a breach of the contract which justified Fitch in entering into the veterinary practice at Walcott, and that because the court granted injunctive relief the decree is an adjudication that he was not in default, and that since he was not then in default he cannot now be in default, notwithstanding the fact that $3,000 of the purchase price remains unpaid. This whole structure falls to the ground on account of the failure of proof noted in the preceding paragraph, if for no other reason.

The allegations of the cross-petition and answer in relation to Fitch being an agent of Mrs. Quigley in the execution of the contract are likewise without support in the record. The testimony establishes without dispute that Fitch was not Mrs. Quigley's agent, as well as the fact that he did not assume or pretend to act as her agent.

The allegations in appellant's pleadings to the effect that Fitch was the owner of the property are not sustained by the record. The deed from Fitch to his mother is a regular warranty deed. The deed was promptly placed on record. It was given in consideration of advances made by the mother in amounts greatly in excess of the value of the property. There is not a word of testimony to impeach its character as an outright conveyance of the property.

The record is conclusive that Mrs. Quigley had no knowledge of the negotiations leading up to the execution of the contract between Fitch and Stephenson or of the fact that the contract had been executed, until some time after its execution. Ultimately Fitch told his mother of the contract. Mrs. Quigley testifies as follows:

"I didn't know anything about Dr. Stephenson buying the building. I didn't know anything about it in January, 1929. My son did not tell me anything about it at all. It was not a complete surprise to me when Dr. Stephenson moved into the building. My son, Dr. Fitch, told me about it after it was done. My son did not have any arrangement with me prior to entering into the contract with Dr. Stephenson, that is, with reference to his entering into the

contract with Dr. Stephenson. After my son had sold the building to Dr. Stephenson, I consented that the deal be consummated in accordance with the contract providing I got the money. I don't know anything about the contract Exhibit 'A.' This is the first time I ever saw it or had it in my hands. I did not see the copy that belonged to my son. All I know about it was what my son told me after the deal was made. I told him that the deal would be all right providing I got my pay, that is, the pay for my building. That was a deal between my son and myself. My son did not tell me that he had represented the building to be his building in the contract."

 Stephenson contends that this conversation amounted to a ratification of the contract between him and Fitch. The difficulty lies in the fact that the contract was not subject to ratification by Mrs. Quigley. It was not made for her nor in her behalf. Fitch was not her agent nor did he pretend to be her agent. He was, in truth and in fact, making the contract for himself even though he did not then have title to the building. In this situation the contract was not subject to ratification by Mrs. Quigley. Wycoff, Seaman & Benedict v. Davis, 127 Iowa 399, 103 N. W. 349. Neither was Mrs. Quigley an undisclosed principal. Fitch was contracting for himself. When told by Fitch of the contract Mrs. Quigley said:

"I consented that the deal be consummated in accordance with the contract providing I got the money. * * * I told him that the deal would be all right providing I got my pay, that is, the pay for my building. That was a deal between my son and myself."

It is perfectly apparent that Fitch was seeking assurance that he could secure the conveyance of title to Stephenson upon the performance of its terms by Stephenson, and we think it is equally apparent that what Mrs. Quigley said was only an assurance that upon receipt of her price she would convey the property. The contract was not ratified by Mrs. Quigley for the reason that it was not legally susceptible of ratification by her. It is obvious that the matters now under consideration were never communicated to Stephenson until Mrs. Quigley testified upon the witness stand, for the allegations relating to these matters were contained in an amendment to the pleadings filed for the purpose of making the pleadings conform to the proofs.

It has been noted that Stephenson paid to Fitch sums totaling $2,000 under the contract. Fitch has paid to Mrs. Quigley either $1,700 or $2,000. The source from which Fitch derived these payments is undoubtedly the money paid to him by Stephenson. Stephenson contends that the receipt of this money by Mrs. Quigley is a ratification of the contract and constitutes an estoppel. For reasons heretofore indicated, the contract was not subject to ratification. Under the arrangements which Mrs. Quigley made in her oral conversation with her son she was at liberty to accept payments from him, and when her price had been paid by the son she would undoubtedly be obliged to convey the property. But the arrangements were between her and her son and not between her and Stephenson. She was not a party to the contract between Fitch and Stephenson either in name or by operation of law. She was the owner of the property. Ordinarily ownership carries with it the right to possession. The only right to possession which Stephenson pleads is based on the contract with Fitch under which he claims that the building was bought for $1,500 and has been paid for and upon which he pleads that he is obligated in no further amounts on account of the breach of the contract by Fitch. It is neither pleaded nor proven that the payments made by Fitch to his mother were known to Stephenson or that Stephenson has done anything or refrained from doing anything on account of such payments having been made. Stephenson is in no worse position than if the payments made by him to Fitch had been paid by Fitch to a stranger. He did not know of the payments being made and he has sustained no detriment thereby. In consequence of this an essential element of estoppel is lacking. He has not changed his position or suffered any detriment on account of the payments having been made to Mrs. Quigley.

It is unfortunate for Stephenson that he entered into a contract with Fitch for the purchase of the property to which Fitch had no title, but Mrs. Quigley is not to blame for this. The deed by which she acquired title was promptly recorded. Stephenson's strategy is to take a position in which he will be able to offset a claim for damages for Fitch's breach of the contract against Mrs. Quigley's right to be paid for the building. Unfortunately for him he has no contractual rights or equities which will enable him to do this. Fitch is not a party to the present action. Whether he is entitled to recover the money which he has paid to his mother, or whether Steph-

464

enson is entitled to recover from Fitch all or any part of the money which he has paid to Fitch, is not involved in this suit and is not now decided.

The trial court determined the issues in favor of plaintiff and entered judgment that she was entitled to the immediate possession of the lots described and directing that a writ of possession issue to put her in possession of the same. The judgment of the trial court is correct, and it is affirmed in all respects.—Affirmed.

EVANS, ALBERT, KINDIG, and DONEGAN, JJ., concur.