FREDERICK B. TOWNSEND, Conservator for Daniel Pierce, a Person of Unsound Mind, v. FRANK STUDER et al.

**Agency:** COLLECTING LOAN MADE: *Evidence.* L. had negotiated numerous loans for T., including the one in suit, had collected several of them, principal and interest, and had placed with him

collateral to secure loans of his own. He had often remitted interest and then received and returned to the borrowers the coupons. At various times T. wrote L : "I want you to get some one to take the six loans I still have that you made for me." "What have you done about the loans you made for me there." "I hope you will, without delay, get all the loans paid up that you made for me." "The amount due on the B. note is $——— send this right away; also, see that the K. No 2,133 is paid right away." "The S. loan (the one in suit) was due January 1. Please remit." "When the last loan you made for me is paid I will return you the J. and P. loans held as collateral " "The J. loan must be paid. I am satisfied there is something wrong about this loan. If you do not fix these matters up without delay, I will see if I can get them arranged without delay. I do not ask you to pay the money, but I want security, and must have it " *Held*, sufficient to show L's authority to collect the note in suit, though he did not have possession of it.

*Appeal from Kossuth District Court.*—HON. W. B. QUARTON, Judge.

WEDNESDAY, OCTOBER 4, 1899.

SUIT in equity to foreclose a mortgage. Defense, payment of the note secured thereby to one Lund, who it is claimed was the agent of plaintiff to receive the amount due. Defendant Neilson, who purchased the premises subject to the mortgage, filed a cross petition against Lund and one J. J. Ryan, who it is claimed were in partnership at the time the payment was made to Lund, in which he asks that, in the event the payment to Lund is held not to have extinguished the mortgage, he have judgment against Lund and Ryan for the amount paid to Lund. The trial court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*Corey & Bemis* and *E. V. Swetting* for appellant.

*Clark & Cohenour* for appellees Frank Studer, Frances Studer, Jacob Neilson, and Elizabeth Neilson.

*Sullivan & McMahon* and *Frank Farrell* for appellee J. J. Ryan.

DEEMER, J.—On and prior to January 1, 1891, C. L. Lund was in business at Algona, Iowa, as a real estate and

loan agent, and continued in that business to the time of his death, July 2, 1896. The defendant Frank Studer, being the owner of the land described in plaintiff's mortgage, and desiring to effect a loan of eight hundred dollars thereon, applied to Lund for such loan. The application was forwarded to Daniel Pierce, residing in DeKalb county, Ill., and then transacting his own business. The application was accepted, and the loan made, for which the defendants Frank and Frances Studer on the first day of January, 1891, executed their promissory note for eight hundred dollars, payable to Daniel Pierce, or order, at Algona, Iowa, on or before January 1, 1896, with eight per cent. interest, as per five coupon notes attached, and reasonable attorney's fees for collection. They at the same time executed their mortgage on said land to secure the payment of said note and interest, which mortgage was duly recorded. C. L. Lund and W. L. Joslyn indorsed said note as follows: "For value received, we hereby guaranty the payment of principal and interest of this bond. Algona, Iowa, July 2, 1891." It is upon this note and mortgage that the plaintiff asks judgment and foreclosure. On October 13, 1893, the defendant Jacob Neilson purchased said land from Frank Studer; receiving a warranty deed therefor, except as to plaintiff's mortgage, which he (Neilson) agreed to pay. In the spring of 1893 C. L. Lund and the defendant J. J. Ryan formed a co-partnership for the transaction of business as real estate agents, which partnership continued until the spring of 1895. There is a dispute as to whether the business of that co-partnership included the loaning of money. Shortly prior to December 15, 1894, Jacob Neilson applied to Lund & Ryan for a loan of three thousand dollars, to be secured by mortgage on said land and other lands owned by him. Neilson's object in securing this loan was to pay off plaintiff's mortgage and certain other liens against the land. The loan of three thousand dollars was procured from the Connecticut Life Insurance Company, the draft for which was made payable to Jacob

Neilson.   Neilson indorsed this draft and delivered it
to Lund, and at the same time executed to Lund, or to
Lund & Ryan, his promissory note for two hundred and
forty-nine dollars and seventy cents,—a sum which, added to
the three thousand dollars, was equal to the amount of the
mortgages to be paid, and the expense of procuring the loan.
This note Neilson afterwards paid in full.   Lund failed to
apply any of the proceeds of said draft and note to the pay-
ment of the plaintiff's mortgage, or to remit any part thereof
to the plaintiff.   To clear the record for the three thousand
dollar loan, Lund caused a forged satisfaction of plaintiff's
mortgage to be entered upon the record.   There is no dispute
whatever that Neilson thus paid to Lund the full amount of
the note sued upon, and that Lund converted that sum to his
own use.   The defendant Neilson alleges that "C. L. Lund
was, in 1891, and from that time until the date of his death,
July 2, 1896, continued to be, a general agent of Daniel
Pierce and his conservator, the plaintiff herein," and there-
fore contends that plaintiff is bound by the payment made to
Lund.   The defendant Studer pleads that Neilson fully paid
and discharged said debt.

The controlling point in the case is Lund's authority to
receive payment of the note held by plaintiff.   The loan
represented by that note was procured through Lund.   The
evidence shows that Studer applied to Lund to procure
him a loan, and signed an application therefor, which
Lund forwarded to Pierce, whom he knew or supposed
to have money to loan, and to whom Lund had previously sent
similar applications.   Pierce having signified his willing-
ness to make the loan, the note, interest notes, and mortgage
were executed and forwarded with an abstract of title; and,
these being approved and retained by Pierce, he sent a draft
for the amount of the loan, payable to Studer, to Lund, to be
delivered to Studer.   As the interest matured, Studer (up
to the time he sold the land) paid the amount to Lund, who
forwarded the same to the plaintiff, receiving in return the

interest note paid, which he afterwards delivered to Studer. Neilson paid the interest maturing after he purchased the land, in the same way. This business was transacted entirely by correspondence, and the following expressions in plaintiff's letters are especially relied upon as showing the agency: "I want you to get some one to take the six loans I still have that you made to me. What have you done about the loans you made for me there? Report about taxes on the land on which you made loans for me. I hope you will, without delay, get all the loans paid you made for me." If it be conceded that these statements show authority to Lund as agent for the plaintiff, to make the loan, it does not follow that he had authority to collect it. As to whom Lund was agent for, see *Security Co. v. Graybeal,* 85 Iowa, 544. Our inquiry being whether Lund had authority to receive the payment, we do not determine for which party he was agent in making the loan. There is certainly nothing in the manner in which the loan was consummated to show authority to Lund to collect the debt.

As the authority of Lund is shown entirely by correspondence, we quote therefrom as follows: Under date of January 24, 1891, Townsend wrote Lund as follows: "I will take the loan on the Danforth land for $800.00, and release any mortgage, and pay the difference. If I understand you right, the land was sold for $30.00 per acre. Do you have many sales at that price? You may make the loan on the Danforth land to Daniel Pierce." The Danforth land is the land owned by Studer, and the eight hundred dollar mortgage referred to in this letter is the mortgage in suit. Acting under this authority, Lund made the loan to Studer, and sent the note and mortgage to plaintiff, to take the place of what is known as the Danforth note for five hundred dollars; and plaintiff paid Lund the difference between the two loans by draft. It will thus be seen that Lund had express authority from plaintiff to make the Studer loan. And it also appears from the correspondence that Lund was making many other

loans for plaintiff, and was accepting payments of principal and interest for and on behalf of plaintiff. Of course, authority to make a loan does not give the agent power to collect either principal or interest, and we cite this correspondence simply to show the relations between the parties. Studer testified regarding the payment of interest as follows: "I paid the interest at Lund's office at Algona, Iowa. He sent and got the coupons for me, and I got the coupons from said office afterwards. * * * He never had any interest coupons in the office when I brought the money there for them. I had to wait while he sent the money off for them. He said he would give me the coupons as soon as he got them. I know he did not have the interest coupons then,—when I left the money,—and this was the first and every other time. I had always to call for them after I had left the money with Lund, and at no time did Lund have the interest coupons." Neilson says that after his purchase he paid the interest to Lund from time to time as it matured, and received a receipt from Lund.

As to the authority of Lund to collect principal and interest, we collect the following statements from the correspondence between Townsend and Lund: July 22, 1895, Townsend wrote Lund as follows: "I want you to get some one to take the six loans I still have that you made for me. Either pay them off, or get some one to take them and I will assign." On September tenth he wrote Lund: "What have you done about the loans you made for me there? Report about taxes on the land on which you made loans for me." Again, under date of September 20th, Townsend wrote: "I hope you will, without delay, get all the loans paid up that you made for me; and I will close up our business, that started so pleasantly, but ends quite otherwise." Under date of January 15, 1896, he wrote: "The amount due on the A. L. Bircher loan is $1,771.11. Send this right away. I want to use the money; also, see that the King No. 2,133 is paid right away. Let me hear from you without delay."

Under date of January 14, 1896, he wrote: "The Frank Studer loan, No. 1,062, was due January 1, 1896. Please remit coupon No. 105 on John McGovern loan, due Apr. 1, 1896; No. 2,178 not paid. Please remit." Under date of January 30th, he said: "Yours of the 29th received, inclosing draft for $1,771.11 on Bircher loan. Send me a draft for $4.41, balance on this loan, and I will send you the papers. I suppose it will not be necessary for me to release this loan. I will send the Thomas King papers with release to the First National Bank of Algona, and draw a draft on you for the amount due. Please take care of the draft. When the last loan you made for me is paid, I will return to you the John Johnson and Edward Peterson loans, held by me as collateral security." A letter of date April 10, 1896, from Townsend to Lund, is as follows: "On January 31st I drew on you for $1,376, amount due on the Thomas King loan, and sent it, with all the papers, to the First National Bank of Algona. You paid no attention to the collection, and it was returned to me. I want to send the matter there again, but would like to have some assurance that you will pay. There is still $4.50 due on the A. L. Bircher loan. Will you pay that. The Peter Johnson loan of $1,000 on the east half of the southwest quarter of section 2-96-5 must be paid up. I am satisfied there is something wrong about this loan. If you do not see fit to fix these matters up without delay, I will see if I can get them arranged without delay. I do not ask you to pay the money on these matters, but want security, and must have it now. An immediate reply is requested." To fully understand this correspondence, it must be remembered that Townsend had made Lund some loans on his individual notes, secured by various collateral mortgages, and had also made loans through Lund to various parties, including Frank Studer. Some parts of the statements extracted from plaintiff's letters refer to Lund's individual loans, and some to the loans he had made as agent for plaintiff. The Studer note was payable on or before January 1, 1896.

There can be no doubt, we think, that Lund had authority to collect both the principal and interest represented by the Studer loan. And that transaction with the Connecticut Life Insurance Company by and through which the loan to Neilson was made amounted to a payment of both principal and interest. It is true that Lund did not have the Studer note in his possession, but that fact is not conclusive of his authority. The rule is that, if one owing money on a written instrument pays or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with has possession of the instrument, and, if not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security. *Tappan v. Morseman,* 18 Iowa, 502; *Security Co. v. Graybeal,* 85 Iowa, 544; *Security Co. v. Kent,* 83 Iowa, 31. The reason why plaintiff retained possession of the Studer note is apparent form the correspondence, and it also appears from this same correspondence that Lund had authority to collect the same. The authorities relied upon by appellant are not in point. They announce the familiar rules to which we have referred during the course of this opinion, and in each there was an entire absence of authority from the principal to collect. The case of *Sax v. Drake,* 69 Iowa, 760, is more nearly in point than any to which our attention has been called, and it sustains our conclusions. See, also, *Wolford v. Young,* 105 Iowa, 512. The case at bar turns upon the express authority conferred on Lund. And, as we have said, we entertain no doubt that he had authority to collect.

As plaintiff's note was paid by and through the loan negotiated through Lund with the Connecticut Life Insurance Company, he has no right to foreclose his mortgage, for it has been satisfied. And, as the loan is thus discharged, there is

no need to consider the issue tendered between Neilson and Ryan. The decree of the district court is right, and it is AFFIRMED.