W. W. MARSHALL & COMPANY, APPELLEE, v. KIRSCH-
BRAUN & SONS, APPELLANT.

JOHN FRITZ, APPELLEE. v. KIRSCHBRAUN & SONS, APPEL-
LANT.

A. K. BROWN, APPELLEE, v. KIRSCHBRAUN & SONS,
APPELLANT.

FILED MARCH 3, 1917. Nos. 19295, 19296, 19297.

1. **Principal and Agent:** AUTHORITY OF AGENT. Defendant is a manu-
facturer of creamery butter at Omaha. F. M. Woods was its agent
in charge of its cream station at Niobrara. The agent purchased
a quantity of cream, paying therefor $2.01 a pound, when the
market value was only 30 cents. For the cream so purchased he
issued defendant's checks to the vendors on blanks furnished by
it, which, when presented, defendant refused to pay, on the ground
that the agent had exceeded his authority in the premises. The
evidence examined and discussed in the opinion, and *held* that the
agent's acts in the premises were in excess of the real and the ap-
parent scope of his authority, and defendant is not liable for any
sum in excess of the market price of 30 cents a pound.

2. ——: ——: RATIFICATION. Where in such case the agent, without authority of his principal, mingled the cream so purchased with other cream that belonged to defendant, and the entire mass was afterwards shipped to such principal, who made a salable commodity out of the shipment, which prevented a total loss of the cream to plaintiffs, *held*, not to be a ratification of the agent's acts.

3. **Bills and Notes:** BONA FIDE HOLDERS. *Held*, that the check that was purchased by Marshall & Company, one of the plaintiffs, was bought under circumstances that were sufficient to place the purchaser upon inquiry as to the changes made upon its face, and that he was not a holder in due course.

APPEAL from the district court for Knox county: ANSON A. WELCH, JUDGE. *Reversed, with directions.*

*Switzler, Goss & Switzler* and *E. A. Houston,* for appellant.

*W. A. Meserve* and *P. H. Peterson, contra.*

DEAN, J.                                          •

W. W. Marshall & Company, John Fritz, and A. K. Brown, hereinafter called plaintiffs, began separate suits against the defendant in the district court for Knox county. The actions were all consolidated and tried there as one case, and they will be so treated here. Plaintiffs obtained judgment, and the defendant has appealed.

The defendant company is an Omaha concern engaged in the manufacture of creamery butter, having many cream stations in this and other states. On April 12, 1913, and for a few months prior thereto, F. M. Woods was the agent of defendant in charge of its station at Niobrara. On that date the market price of the cream product called butter fat was 30 cents a pound at Niobrara, and Mr. Woods purchased about 600 pounds, giving checks therefor representing a price paid of $2.01 a pound. For the product so purchased he issued approximately 50 checks to the several patrons of the cream station on printed forms furnished by defend-

ant to the amount of $1,204.81. When the checks were presented to defendant, payment was refused on the ground that the agent exceeded his authority in purchasing the cream at a figure so greatly in excess of its market value.

The plaintiffs in their brief argue "There are but three questions involved: First. Did F. M. Woods, in the purchase of said cream and the issuance of said drafts, act within the apparent scope of his authority? Second. If he did not act within the apparent scope of his authority, were his acts afterwards ratified by the defendant? Third. Were the contracts of Woods as to the price agreed to be paid prohibited by the anti-discrimination laws of the state, and, if they were, can the defendant be heard to complain?" We find it necessary to discuss only the first and second of the foregoing assignments.

One of the witnesses called by plaintiffs is Mrs. Cora Woods, the wife of the agent, who died before the trial. S. B. Blair is a traveling agent of defendant who called on Mr. Woods at Niobrara a few days before the cream in question was bought. Plaintiffs contend that Mr. Woods received certain instructions from Mr. Blair on the occasion of his visit from which Mr. Woods derived authority to pay the prices for cream on April 12 that are in dispute. Mrs. Woods, in her examination in chief, testified that she was not present during all of the conversation between her husband and Mr. Blair. She also testified that Mr. Blair in 1909 or 1910 told her husband that the card prices sent to agents by the company "were not intended to govern in case of a fight, * * * but to meet the price and go them one better, 'never to follow, always to lead.'" She testified that Blair told her husband in the winter of 1913 to pay "one cent more than the other companies were paying." Mrs. Woods testimony is not only fragmentary, but some of it is remote as to time, and all of it that is material is contradicted by Mr. Blair.

On April 12 there were four cream stations at Nio-
brara. A rivalry arose among three of the agents with
respect to the purchase price of cream. In the morning
the market price was 30 cents a pound, or thereabouts,
but at noon the buyers were paying 70 cents. In the
afternoon one buyer paid $1 a pound and shortly there-
after another paid $2 and before night Mr. Woods and
one or more of his rivals were paying $2.01 a pound.
Clearly this was not the market price, but one that was
artificially inflated for some purpose not altogether
clear. But it is not without significance that before the
day closed Woods was the only agent who had on hand
any of the cream bought that day at more than $2 a
pound; all of the other agents by some means having con-
trived to dispose of their respective purchases to the
unsuspecting agent of defendant. The record shows
that one rival agent bought 80 pounds at $2.01 a pound,
and that immediately he employed three men to take the
cream so purchased in three separate lots and sell it to
Mr. Woods, who paid $2.01 a pound. One other agent
purchased about 9 pounds at $2 a pound, but soon after
the vendor took the cream back, returning the cream
check to the agent. The record fails clearly to disclose
the identity of the final purchaser at Niobrara of the 9-
pound lot, but from a similarity of names and of the
quantity involved in the purchase that appears elsewhere
in the record there is much more than an inference
that it too found its way to the cream station of defend-
ant and that Woods bought it at $2.01 a pound.

Plaintiffs show that the agent Woods sent a telegram to
his principal that was received at the home office by
R. L. Kent, an employee there, about 2 o'clock in the
afternoon of the day the cream was bought, and insist
that the telegram was sufficient to charge defendant in
the premises and to be a ratification of the agent's
conduct unless promptly repudiated by the principal.
Following is a copy of the telegram: "Niobrara, Neb.,
April 12, 1913. Kirschbraun & Sons, Omaha, Neb.

Fight is on, am paying 34 cents for cream. F. M. Woods."

Mr. Kent, who was called by plaintiffs on this point, testified that the telegram was received at defendant's office between noon and 2 o'clock on Saturday, April 12. The telegram was not answered, but, in view of the record before us, to hold that it was notice to defendant that he was paying such an extortionate price for cream would be an absurdity. Mr. Kent, in direct examination, testified that he never authorized the agent to pay more than the "card price" for cream, and that he first learned that the agent had paid $2.01 a pound on Sunday evening, the 13th, at about 8 or 9 o'clock. He also testified that he called Mr. Woods up by telephone on Monday, April 14, and in behalf of the company notified him that he was relieved of his agency.

Following is a copy of the postal card notice sent by defendant to Mr. Woods shortly before April 12, authorizing him to pay 30 cents a pound for butter fat:

"Omaha, Neb., April 7, 1913.
"Station Operators:

"Effective Wednesday morning, April 9th, put your price of butter fat to 30c. This is an extraordinarily high price under the existing market, so do not, under any consideration, exceed this figure, without first taking it up with this office. If you have trouble in buying on this quotation, call us up by 'phone.

"Kirschbraun & Sons, Inc."

Plaintiffs argue that "no presumption of want of authority would arise by reason of the fact that $2 and $2.01 a pound was paid and offered for butter fat." With the record before us, it appears that the presumption points in the opposite direction. A purchasing agent, having authority to buy for his principal a common article of commerce that is worth, when bought, approximately 30 cents a pound, without authority pays $2.01 a pound, an abnormal price that is almost seven times more than its real or market value at the time,

and so known to those dealing with the agent. Can it be that such conduct on the part of an agent is not sufficient to put a reasonably prudent man on inquiry as to the authority of the agent to do a thing so unusual? Apply the rule contended for by plaintiffs to the purchase or sale of wheat or sugar or coal or flour or farm implements or clothing or any of the innumerable necessities of life, and, in the absence of the agent's authority in a like case, the entire lack of fairness, the absurdity of the transaction, is at once apparent. Such conduct on the part of the agent cannot be upheld except upon the clearest proof of authority or proof of ratification by the principal, and both are lacking in the present case.

Plaintiffs argue that, even if the agent was not authorized to purchase the butter fat at the price of $2.01 a pound, defendant ratified the unauthorized act by accepting the shipment on arrival at Omaha; but they clearly fail to establish their position. Defendant did right in taking the cream and converting it into a salable commodity. Butter fat and kindred dairy products are perishable goods, which, in brief, impose a duty upon the party who is in possession of the goods in a proper case of so disposing of them as to prevent loss. 30 Cyc. 1394, note 69. The agent's purchase of cream at $2.01 a pound was not only unauthorized, but he without authority mingled the cream so purchased by him with cream belonging to defendant of the value of 30 cents a pound, so that it could not be separated and plaintiffs' cream returned to them in kind, as they insist should have been done. The defendant converted perishable property into a salable article of commerce. Obviously on this point plaintiffs' protest is not well grounded.

The record before us shows that defendant acted fairly from the inception of the trouble. In its answer it offered to pay to plaintiffs 30 cents a pound for the butter fat in dispute, but the offer was not accepted. It is not denied that the company even tried to "buy its peace,"

which it had a perfect right to do without compromising or waiving its defense, by offering the plaintiffs 50 cents a pound for the cream in dispute, "rather than have any trouble about it," as the president of the company testified. This too was not accepted.

Another feature remains. Two of the drafts in suit are in excess of the printed limitation of $15 that appears on the face of each. Following is the form of the draft:

"Kirschbaum & Sons, Inc. Manufacturers of Fancy Creamery Butter; Wholesale Butter & Eggs, Cold Storage and Freezing, 1209-1211 Howard Street. Original. Station —. Date—, 19—. No. 2665. Creamery Department. This check for cream only. Not good for more than $15. At sight, pay to the order of———,———dollars.

"To Kirschbraun & Sons, Inc., Omaha, Neb., or payable through First National Bank, Omaha, Neb.———, Operator."

Marshall & Company, appearing as plaintiffs herein, are merchants, who sue to recover $37.98 as innocent purchasers of a check for that amount issued to G. Summers for cream on April 12, 1913, at $2.01 a pound. The check, properly filled in and with the name "F. M. Woods" appended thereto over the word "operator," that was introduced in evidence is the same as the check shown above, except that a line was drawn through the words, "This check for cream only. Not good for more than $15." The words beneath the line are plainly discernible. The check in question is in such condition as to put the purchaser on inquiry, and he could not be an innocent purchaser. It contained two limitations: First, it was by its printed terms good for only $15; second, the $15 limitation was defaced. There is no testimony as to the time when, nor by whom, the Marshall & Company check was changed. But there is testimony showing that a like check was changed in a like manner by Mrs Woods, by direction of her husband, on April 12, in payment for cream at $2.01 a pound. The president

Marshall & Co. v. Kirschbraun & Sons.

of the defendant company testified that no authority was ever given to any agent of defendant to enlarge the $15 limitation on the check. From all the facts in evidence we conclude that Marshall & Company, even if they did not have actual knowledge, were put upon inquiry as to the validity of the check on which they brought suit, and as to them they are only entitled to recover the same as the other defendants, namely, 30 cents a pound for the cream that was sold to agent Woods by G. Summers, from whom Marshall & Company purchased the check in suit. 1 Parsons, Notes and Bills (2d ed.) p. 119; 1 Randolph, Commercial Paper (2d. ed.) sec. 386.

It is the judgment of this court that plaintiffs, respectively, recover from defendant 30 cents a pound for all cream delivered on April 12, 1913, by A. K. Brown, J. Fritz, and G. Summers, respectively, to F. M. Woods. The judgment of the district court is reversed, with directions to enter judgment in that court in harmony with the views expressed in this opinion.

REVERSED.

HAMER, J., not sitting.