M. W. RITTER, Appellant, v. C. A. PLUMB et al., Appellees.

**PRINCIPAL AND AGENT:** Implied Agency—Insufficient "Holding
1 Out." The holder of notes and mortgage who accepts payment of
one of the notes from a *maker* thereof, in form of part cash and part
check payable to the holder, from one who had bought the property
subject to the mortgage, cannot be held thereby to have held. out the
said maker as his agent to receive payment of the remaining note; nor
will the added fact that, on two occasions *subsequent* to the payment in
question and on one occasion *prior* thereto, the said holder had author-
ized the said maker to receive payments on wholly different transac-
tions, constitute such "holding out."

**PRINCIPAL AND AGENT:** Assumed Agency—Ratification. The
2 holder of a note and mortgage was informed by one who had subse-
quently bought the mortgaged property that he had, without re-
quiring the production of the note, paid the note to one of the orig-
inal makers of the note. Thereupon, the holder admitted that he
had received part payment from the said maker, and exhibited the
mortgage papers to the informant. Held insufficient to show ratifi-
cation of the payment to the said maker.

**PRINCIPAL AND AGENT:** Unauthorized Agency—Ratification by Ac-
3 cepting Benefit. The holder of a note is not estopped to challenge
the unauthorized act of a party in receiving payment of the note, by
accepting from such unauthorized agent part of the payment, (1)
when he accepted such payment without knowledge that the party
was assuming such agency, and (2) when such party was a *maker* of
the note.

**EQUITY:** Principles—Sleeping on Rights. One who, without requiring
4 the production of a note, innocently pays the note to one who is not
the agent of the holder, may not insist that the said holder, and not
himself, should suffer the loss, especially when the latter, upon dis-
covering the truth, does nothing to protect himself against the sol-
vent wrongdoer.

Headnote 1:  2 C. J. pp. 621, 626, 956.  Headnote 2:  2 C. J. p. 954.
Headnote 3:  2 C. J. pp. 495, 496.  Headnote 4:  2 C. J. pp. 465, 564.

Headnote 3:  21 R. C. L. 933.  Headnote 4:  10 R. C. L. 388.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

MAY 3, 1927.

Action in equity, to foreclose a real estate mortgage. A purchaser of the mortgaged property subject to the mortgage defended, and pleaded payment of the mortgage debt to the alleged agent of the mortgagee. From a judgment for the defendant the plaintiff appeals.—*Reversed.*

*G. A. Mote,* for appellant.

*A. B. Hoover,* for appellee Tom Smith.

VERMILION, J.—On March 1, 1920, C. A. Plumb and wife executed the real estate mortgage in suit to the appellant, Ritter, to secure the payment of two notes, one for $300 and one for $700. The notes were signed by C. A. Plumb and his wife and J. D. Plumb. On the same day, C. A. Plumb and wife conveyed the mortgaged premises to the appellee Smith, subject to the mortgage.

The note for $300 has been paid. The action is to foreclose the mortgage for a balance alleged to be due on the note for $700. Personal judgment was asked against the makers of the note. The appellee Smith was made a party, but no personal judgment against him was prayed. He alone appeared, and pleaded payment. He alleged that the note had been paid by him to J. D. Plumb; that J. D. Plumb was appellant's agent to receive such payment; that appellant had ratified the act of Plumb in so receiving payment; and that he was estopped to deny Plumb's agency.

It is undisputed that J. D. Plumb did not have possession of the notes and mortgage at the time of any alleged payment to him.

It is well settled that it is the duty of one making payment on a written obligation to another as agent to see, at his peril, that the one paid is in possession of the obligation, or, if not, the debtor must establish the authority of the one whom he pays, to receive payment. But the possession of negotiable paper is not the only evidence of authority to receive payment, and payment to an agent will be sustained where the conduct of the holder, or his manner of doing business, has been such as to fairly indicate that the agent had authority to receive payment,

1. PRINCIPAL AND AGENT: implied agency: insufficient "holding out."

or, to induce the debtor to believe that he had such authority. *Wolford v. Young,* 105 Iowa 512; *Townsend v. Studer,* 109 Iowa 103; *Harrison v. Legore,* 109 Iowa 618; *Bissell v. Spring,* 179 Iowa 1005; *McCullough v. Reynolds,* 181 Iowa 1089; *Sioux City Cattle Loan Co. v. Lovrien,* 198 Iowa 296; *Huismann v. Althoff,* 202 Iowa 70.

I. There is no evidence of express authority on the part of J. D. Plumb to receive payment, as appellant's agent, of either of the notes.

The evidence relied upon to show that appellant held Plumb out as having authority to receive payment of the note for $700 relates to the circumstances of the prior payment of the note for $300, and to payments made by others to Plumb on obligations due appellant.

There was nothing in the manner of payment of the $300 note to indicate that Plumb was appellant's agent to receive payment of the one for $700. Appellee, through his agent H. A. Smith, gave to Plumb his check for $239.50, payable to the order of appellant, together with a sufficient sum in cash to pay the $300 note. This check and the requisite additional cash were by Plumb given to appellant, who surrendered the note to Plumb, and the latter sent it to appellee. Plumb was appellant's debtor, one of the makers of the $300 note. The testimony is undisputed that, when this note was due, appellant demanded the money of Plumb, who said he would get it; and that he made no demand of appellee. Appellee knew that appellant was the holder of the mortgage on his property, and his check in part payment of the note was payable to appellant. To that extent, there was no payment to Plumb at all. Appellee alleged in his answer that he had agreed to pay the mortgage; but no such agreement was contained in his deed, and he testified that he bought the property subject to the mortgage. Appellant knew only that appellee had purchased the property subject to the mortgage. The receipt by him from Plumb, who was under obligation to pay the debt, of the check of one who, so far as he knew, and in fact, was under no obligation to pay it at all, with sufficient cash to pay the note, did not charge him with notice that Plumb, his debtor, had assumed to act as his agent in receiving the money from the purchaser of the property, against

whom he made no claim. There is no evidence that Plumb in this transaction claimed to be appellant's agent.

The claimed payment of the note for $700 was made July 3, 1922. The appellant went to California on September 2, 1922, and was gone almost a year. He admitted that, in two instances, where he held contracts acquired from Plumb for the sale of property, or which were payable at Plumb's office, he directed payments during his absence to be made to Plumb. There is testimony that, in another instance, payments on a note due appellant were made to Plumb, prior to 1922. The papers in that instance were left at Plumb's office, and were surrendered on final payment.

It is clear that any authority given to Plumb, subsequent to the claimed payment of the $700 note, to receive payments due appellant from others, could not constitute a holding out of Plumb as his agent to receive money due him generally prior to such express authority. There was no showing that appellee or his agent had any knowledge, at the time the $700 note was claimed to have been paid to Plumb, that the latter had ever received or collected money due appellant. There was nothing, therefore, in these transactions to induce a belief on their part that he had authority so to do. The evidence failed to establish that appellant held Plumb out as his agent to receive money due him, or that his conduct was such as to induce in appellee a justifiable belief that he had such authority.

II. The appellee claims to have made payment of the note for $700 by his check for $766.65, payable to the order of J. D. Plumb, which was given to Plumb on July 3, 1922. Plumb gave

2. PRINCIPAL AND AGENT: assumed agency: ratification.     a receipt for the amount of the check, signed by himself, which recited that the amount was a full settlement of the note and mortgage held by appellant, and in which he agreed to turn over the papers pertaining to the mortgage, including the insurance policy and abstract. On July 8th, Plumb paid to appellant $100 of principal, and the interest due on the note up to March 1, 1922; and on September 2, 1922, made another payment of $100 on the principal.

The claim of ratification on the part of appellant of Plumb's action is predicated on appellant's conduct at and subsequent to August 23, 1922, on which date he was informed of the payment

made to Plumb. Concerning what then occurred, H. A. Smith, appellee's agent, testified that he first met appellant on that date, to see about the abstract and releasing the mortgage. He said:

"I asked him if he held a mortgage on 1103 East State Street. He said, 'Yes, sir.' I handed him this piece of paper I got from Plumb. I told him that I had paid the mortgage. * * * He said he had the abstract at the Iowa Savings Bank, and would meet me there at 10:00 o'clock next morning and show it to me. He met me there and showed it to me. When I told Mr. Ritter that I had paid Plumb this $700 note, he said he received $100 about that time, and told him he was going to California about September 1st, and would have to have the rest of it. I said I had waited long enough for the abstract, and something would have to be done."

Appellant did not deny having this conversation. He denied that the receipt was shown to him, and testified that Smith could not then find it. He admitted thereafter receiving $100 from Plumb on the note.

Nothing was done by either party while appellant was in California. After his return, H. A. Smith, representing appellee, saw him in August, 1923. He testified:

"I went down there, and says, 'Have you seen Plumb yet?' He says, 'No.' I says, 'Something has got to be done. I have waited long enough for the abstract and mortgage.' "

He testified that appellant volunteered to go with him to see Plumb, but that they did not find him. The appellee and H. A. Smith testified that they talked with appellant on September 26, 1923, and he then told them again that the note would have to be paid. This action was commenced by service of notice on appellee on October 25, 1923.

We are of the opinion that no ratification of an assumed agency on the part of J. D. Plumb to receive payment of the $700 note for appellant was shown. The only thing in the record in any way tending to show that Plumb assumed to so act in receiving the check for $766.65 is the receipt given by him. When the relation of the parties is considered, it is doubtful if anything in the receipt can be construed as so showing. The property was purchased by appellee from C. A. Plumb through J. D. Plumb. The Plumbs appear to have been in the real

estate business, under the name of Plumb Bros. The property was sold subject to the mortgage. While appellee did not agree to pay the mortgage, it is clear that he expected to do so, as a part of the consideration to be paid by him for the property. He would be compelled to do so, if the mortgagors did not, in order to release the lien on his property. The Plumbs were liable on the note, and were the only persons liable to the appellant. The receipt would appear to show no more than that appellee had paid to the person through whom he bought the property, the balance of the purchase price, thereby furnishing to the mortgagors the money to pay their obligation to appellant, and that J. D. Plumb agreed to turn over to appellee the abstract, which the vendors—not the appellant—were under obligation, it may be assumed, to furnish, and the papers pertaining to the mortgage.

But, if it be conceded that J. D. Plumb did assume to receive the check as agent for appellant, we fail to see how anything that appellant did or omitted to do can be construed as a ratification.

It is contended that, in receiving the subsequent payment from Plumb, he accepted a part of the benefits of Plumb's act, and the familiar rule is invoked that one cannot accept the benefits of the unauthorized act of an agent and deny the authority of the agent, or repudiate his acts. But it is to be remembered that J. D. Plumb was liable to appellant on the note, and appellant had an undoubted right to accept payment from him. In doing so, even with knowledge that appellee had paid to Plumb the amount due on the note, or even that Plumb had assumed to act as his agent in receiving it, he did no more than accept a payment from Plumb to which he was entitled. He did not thereby avail himself of advantages derived from the unauthorized act of Plumb, but received only what was due him from Plumb. Mechem states the applicable rule as follows:

3. Principal and Agent: unauthorized agency: ratification by accepting benefit.

"So, as has been stated, the acceptance and receipt of the benefits must, to work a ratification, have been voluntary, and must find their warrant in rights flowing from the act. For, if the principal had no choice, if the benefits could not be separated from something to which he was in any event entitled, or if his act was not confirmatory, as where he would have been

entitled to the same benefit independently of the act in question, the acceptance and receipt under such circumstances would not constitute a ratification.'' 1 Mechem on Agency (2d Ed.), Section 439.

See, also, *Forcheimer & Co. v. Stewart*, 73 Iowa 216; *Wycoff, Seaman & Benedict v. Davis*, 127 Iowa 399; *Scales v. First State Bank*, 88 Ore. 490 (172 Pac. 499); *Town of Tukwila v. King County*, 99 Wash. 439 (169 Pac. 824); *Skelly Oil Co. v. Pruitt & McCrory*, 94 Okla. 232 (221 Pac. 709); *Marshall & Co. v. Kirschbraun & Sons*, 100 Neb. 876 (161 N. W. 577); *Short v. Metz Co.*, 165 Ky. 319 (176 S. W. 1144); *Owens Bottle-Mach. Co. v. Kanawha Banking & Tr. Co.*, 259 Fed. 838; 2 Corpus Juris 495.

It is said that appellant did not repudiate the act of Plumb. He did not expressly do so, it is true; but neither did he expressly ratify it. And we think that what he did, when informed of what was claimed to be payment in full to his alleged agent, was, in effect, a repudiation, and must have been so understood by appellee and his agent. If the mortgage was paid, as it would have been by payment of the $700 note to his authorized agent, or to one whose unauthorized assumption of that relation he ratified, appellee was entitled to the release of the mortgage and to the abstract. Appellee's agent went to see him about the abstract and releasing the mortgage. He did not release the mortgage and did not surrender the abstract, but, in effect, refused to do so. He said he would, and did, permit appellee's agent to inspect the abstract, and did no more. See *Klindt v. Higgins*, 95 Iowa 529.

Appellee complains that appellant made no demand upon him for payment of the mortgage. He held no obligation of the appellee's, and no right of personal recovery against him; he had merely a lien upon the property; and this he did not release; and this, and this only, is he attempting to enforce.

III. In addition to what has been said, it is to be observed that the situation lacks other essential elements of an estoppel. It is clear that no estoppel could arise prior to the time appellant was informed of the claimed payment to Plumb. But at that time, appellee was as fully conversant with the facts as appellant. What was then said by appellee's agent amounted to a demand for the release of

4. Equity: principles: sleeping on rights.

the mortgage and the surrender of the abstract, and appellant as plainly refused to accede to it. Although this was known to appellee, he did nothing, and did not pursue his remedy against Plumb. *Logan v. Davis,* 147 Iowa 441; *Holmes v. Curl,* 189 Iowa 246.

Moreover, no prejudice is shown. It appears that Plumb was insolvent in 1923, but there is no showing that he was solvent at the time the check was given to him, or at any time thereafter. *City Bank of Mitchellville v. Alcorn,* 188 Iowa 592.

The familiar doctrine that, where one of two innocent parties must suffer from the wrong of another, the one who made possible the commission of the wrongful act must bear the loss, cannot aid appellee. The opportunity for the loss was occasioned by his payment to Plumb, and not by anything that appellant did or omitted to do. Desiring to discharge the lien upon his property, appellee paid the money, not to the holder of the lien, but to one who did not have the note or mortgage, and whom he had no right to assume to be authorized to receive payment for the mortgagee; and he knew that appellant, when advised of such payment, refused to release the mortgage.

We are constrained to say that the judgment must be, and is, reversed.—*Reversed.*

EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.