Hubert Kloewer, appellee, v. Associates Discount Corporation, appellant.

No. 48348.

(Reported in 62 N.W.2d 244)

374

January 12, 1954.

White & White, of Harlan, for appellant.

Leonard W. Fromm, of Harlan, for appellee.

MULRONEY, J.—Plaintiff brought this action in equity to cancel a note and conditional sales contract which he had executed at the time he purchased an automobile, from Mickel

Motors. The evidence showed the amount due on the note had been paid to George Mickel by a check drawn by plaintiff to Mickel Motors, the business name of George Mickel. At the time of this payment the note and conditional sales contract had been assigned to defendant finance company and were in its possession. The trial court held George Mickel was the general agent of defendant finance company and had specific authority to collect the note, and payment to George Mickel entitled plaintiff to the cancellation of the note and conditional sales contract.

In 1948 George Mickel was in the used car business in Harlan, Iowa. During that year he had several talks with representatives of the Associates Discount Corporation of Omaha with respect to the latter company handling his automobile financing. The result was that Mickel entered into an agreement with the finance company whereby the company agreed to finance his car operation, both wholesale and retail. The finance company was not particularly interested in the wholesale (floor plan) business but was desirous of financing Mickel's retail business. After this agreement the finance company financed Mickel's purchase of cars and it furnished Mickel with note forms, conditional sales contract forms, property statement forms, rate books and other supplies for Mickel's handling of the financing of his retail sales through the finance company. The company agreed to pay Mickel a commission for the retail contracts he secured which is called "Dealers' Participation" by the company but it amounts to a commission for each retail contract Mickel secured, to be paid when the conditional sales contract paid out. Mickel was furnished two charts or two types of rates. One rate, presumably the higher, was to be "pushed" when there was no competition and the other was to be "pushed" when there was bank competition.

The parties operated under the above agreement from August 1948 until Mickel Motors closed, evidently by action of creditors, shortly after January 1, 1949. During this period of time Mickel financed many retail sales of cars with defendant-company. The record shows that in October 1948 Mickel had commissions due him of $636.50 for the retail sales he had financed through defendant-company.

On December 11, 1948, plaintiff purchased an automobile from Mickel for $2750; $1000 was paid in cash; $250 allowed on a trade-in; and the balance, or $1500, was financed through defendant-company. This balance plus finance charges caused a total balance of $1605, which was to be paid in four equal installments of $401.36 payable April 1, 1949, July 1, 1949, October 1, 1949, and January 1, 1950. The note and the conditional sales contract were executed on the 11th of December at Mickel's place of business in Harlan. The conditional sales contract and the note show on their face that they were immediately assigned to defendant-company and are payable at its Chicago office.

Later in the month of December 1948 plaintiff talked to Mickel and told him he wanted to pay the balance. The amount required to pay a note before maturity is known in the trade as the "payoff" and in most cases could be determined from the rate charts or information in the hands of the dealer, but this was not a monthly contract and Mickel did not know how much plaintiff would have to pay when paying the note off before maturity but he said he would call the branch office in Omaha and find out. Mickel did call several times in the next few days in an effort to reach Ed Derum, the branch manager of defendant-company in Omaha. He finally reached Mr. Derum on December 31, 1948, when plaintiff was in the garage. When Mickel told Mr. Derum what he wanted, the latter said he would figure up the contract and call back. Mickel testified: "When he called me back, he told me the amount of the payoff [$1550]. I don't think there was very much said outside of that. I said Kloewer was here, wants to pay the thing off. Derum says, all right, go ahead, collect it. I got the money then. He [plaintiff] gave me the check."

Mr. Derum testified: "I then figured the payoff, called Mickel back and quoted him the payoff of this Kloewer account. Mickel said Kloewer was sitting there next to him, and this payoff I had quoted was very much to his satisfaction. There was nothing said with reference to payment. I did ask Mickel, as long as Kloewer was sitting there, would the check be made to Associates Discount by Kloewer, and I didn't get any answer. * * * I didn't tell Mickel that I wanted him to get the money

from Kloewer. I was quoting to Mickel the payoff on Kloewer's account. The purpose in quoting the payoff to Mickel was so Mickel would know how much to collect from Kloewer. * * * The reason that I quoted Mickel a payoff was not necessarily that I expected and intended to have Mickel collect the money."

■■ I. This record does not establish that Mickel was the general agent of defendant-company with general authority to collect or receive payment of obligations which had been assigned to the company. He was a special agent engaged in what might be called "selling" its retail finance service. Plaintiff cannot rely upon any general apparent authority. As stated in Restatement, Agency, section 71c: "* * * an agent who makes an authorized loan does not thereby have apparent authority to receive payment of the debt."

■ II. Plaintiff knew his note and contract had been assigned to defendant-company and he knew Mickel did not have possession of these instruments. Plaintiff had the burden of establishing Mickel's authority to receive payment for the company. Ritter v. Plumb, 203 Iowa 1001, 213 N.W. 571; Engelke v. Drager, 213 Iowa 598, 239 N.W. 569; 3 C. J. S., Agency, section 317c, page 262.

In Ritter v. Plumb, supra, at page 1002 of 203 Iowa, we said: "It is well settled that it is the duty of one making payment on a written obligation to another as agent to see, at his peril, that the one paid is in possession of the obligation, or, if not, the debtor must establish the authority of the one whom he pays, to receive payment."

■■ III. The question here is as to the extent of authority of an agent as to the particular transaction involved. 3 C. J. S., Agency, section 324. In short, did the evidence establish Mickel's authority from the company to receive the payment from plaintiff? We hold, under the special facts of this case, that it did. In this instance Mickel was made the company's collecting agent. This contract was different from the usual installment obligation in that it provided for quarterly rather than monthly payments. The note and contract forms are made for monthly payments, but in this instance the printed word "monthly" on the forms was crossed out and the quarterly payment dates inserted.

At any rate special inquiry as to the payoff amount had to be made and when this figure was finally obtained from the branch manager Mickel testified the branch manager told him to collect that sum from plaintiff. The branch manager, in the course of his testimony, admits he gave Mickel the amount of the payoff "so Mickel would know how much to collect from Kloewer." It is true that after this admission the branch manager said he did not expect Mickel to collect the account but in the next breath he states he "understood at that time that Kloewer was there to pay off his account with us" and he admits that Mickel had authority to receive Kloewer's check for the amount of the payoff. The fact that the check was made out to the agent and not the principal is immaterial. A check payable to the collecting agent's order is effective as paying the obligation when the agent receives the money on the check. Restatement, Agency, section 178.

The judgment is affirmed.—Affirmed.

All JUSTICES concur.